## STATE OF OREGON,
*Respondent,*

*v.*

## DENNIS RAY NATION,
*Appellant.*

## (No. 122,532, CA A20311)

636 P2d 1001

Michael E. Swaim, Salem, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction of robbery in the first degree. ORS 164.415. He assigns as error denial of his pretrial motions to suppress: (1) all statements made by him, because his arrest was unlawful; (2) all statements made by him while in custody, because he was not arraigned within the time specified in ORS 135.010; and (3) any in-court identification, on the ground that the pretrial identification process was unduly suggestive. We affirm.

In ruling on defendant's pretrial motion, the court made extensive findings of fact, which we summarize. The crime occurred at a Plaid Pantry store at approximately 12:30 a.m. on September 25, 1980. A clerk, John Craig, was the only employee in the store. At that time, a man entered the store and demanded money. He was given money and food stamps by Craig. The store was well lighted, and Craig had an unobstructed view of the man from approximately three feet away. After the man left, Craig called the police, and an officer arrived within three minutes. Craig described the robber and the clothing he was wearing and indicated he had a partially healed black eye. Craig said the robber did not have any facial hair. He told the officer that, just prior to the robbery, he saw a white, full-sized sedan approach the store in a suspicious manner and park adjacent to it.

The following day, Detective Kohlmeyer, who was assigned to investigate the robbery, interviewed Craig. Kohlmeyer was given essentially the same information regarding the incident as had been given the first officer. However, Craig told Kohlmeyer that, upon reflection, he recalled that the robber may have had a light mustache and goatee.

Sometime on September 25 or 26, the police received information from a confidential informant that defendant had committed the robbery. After receiving that information, Kohlmeyer interviewed defendant's father, who told the detective that on the night of the robbery he had dropped defendant off at a friend's house located approximately four blocks from the Plaid Pantry store. Defendant's father said the friend owned a white Dodge

sedan. The description, given by defendant's father of defendant and of the clothing he wore matched the description given by Craig. The detective was also told by defendant's father that defendant had a partially healed black eye and that the day following the robbery, defendant had some cash and food stamps in his possession. Based on this information, Kohlmeyer focused his investigation on defendant.

Kohlmeyer, in an attempt to locate defendant, went to the home of defendant's brother at about 9 p.m. on September 29, 1980. He rang the door bell and was invited in by an unidentified woman who answered the door. Defendant was in the living room watching television with a number of other individuals. Kohlmeyer advised defendant of his "Miranda rights" and, after a short conversation, asked defendant if he would be willing to accompany him to the police station to discuss his whereabouts on the night of the robbery. The court found that defendant voluntarily agreed to go to the police station and that no threats or promises were made to influence that decision.

At the police station, the detective asked if he could take defendant's picture. Defendant said he did not want his picture taken without the presence of counsel. Defendant was then placed under arrest at approximately 10 p.m. on Monday, September 29, 1980. Immediately after the arrest, Kohlmeyer took a picture of defendant, who the trial court found was uncooperative. During the picture taking process, defendant tilted his head back and closed his eyes. Kohlmeyer assembled a photographic throwdown, which included defendant's picture with five other photographs. The six photographs were stapled to a large envelope and shown to Craig. The court found that Kohlmeyer did not suggest that the robber was depicted in the throwdown or that anyone had been arrested for the crime. Craig was unable to make an identification.

The following morning, Detective Mason interviewed defendant, who was in custody in the county jail. Mason advised defendant of his "Miranda rights" and asked him if he would be willing to discuss the robbery. The trial court found that defendant voluntarily agreed to waive his rights to remain silent and to counsel and agreed

to give a statement. Defendant gave a detailed confession of his involvement in the robbery. Subsequent to recording defendant's statement, Mason took a photograph of defendant and turned it over to Kohlmeyer, who put that photograph together with four others and presented the five pictures in a single stack to Craig. Craig immediately and positively picked out defendant's photograph, which was the second picture in the stack. The court found that during trial Craig made an unequivocal and certain in-court identification of defendant and that his identification was not the product of the prior photographic identification procedure.

Defendant's first assignment of error relates to denial of his motion to suppress any confessions or admissions on the ground that they were the product of an illegal arrest. He contends that although the police had probable cause to arrest him, the arrest was illegal, because they did not obtain an arrest warrant prior to entry into his brother's residence. He cites *State v. Olson,* 287 Or 157, 598 P2d 670 (1979), in support of his contention. In *Olson,* police, who had probable cause to arrest defendant but no arrest or search warrant, forcibly entered defendant's house, arrested him and seized evidence. The court held that, where no exigent circumstances exist, probable cause to arrest does not give the police authority forcibly to enter the suspect's home. The stated rationale was that "[i]f probable cause to arrest is all a police officer needs to make constitutionally reasonable a forced entry into a person's house to arrest him, it is obvious that there will be little necessity for the officer ever to get a warrant; the requirement for entry without a warrant and for getting a warrant would be the same." 287 Or at 162.

■ *Olson* is inapposite. Detective Kohlmeyer went to the residence for the purpose of locating defendant and talking to him about the robbery. He did not go there for the purpose of arresting defendant, although he had probable cause to make an arrest for robbery. The officer did not make a forcible entry into the house. He was invited into the residence by the woman who answered the door. Defendant does not contend that the woman had no such authority. As the court found, defendant voluntarily accompanied the officer to the police station and was not

under arrest at that time. He was later arrested at the police station. The court did not err in denying the motion to suppress on the ground urged.

■ Defendant next contends that his motion to dismiss or, in the alternative, to suppress all the statements he made, should have been granted on the ground that he was not arraigned within the time specified in ORS 135.010:

"* * * Except for good cause shown or at the request of the defendant, if the defendant is in custody, the arraignment shall be held during the first 36 hours of custody, excluding holidays, Saturdays and Sundays. In all other cases the arraignment shall be held within 96 hours after the arrest."

Defendant was arraigned 39 and one-half hours after his arrest, and the state concedes this was not within the time limits of ORS 135.010. The fact that there was a delay in arraignment, contrary to the statute, does not necessarily require dismissal of the charge or suppression of statements made by defendant between the time of his arrest and the arraignment. *State v. Shipley,* 232 Or 354, 375 P2d 237 (1962); *State v. Jenks,* 43 Or App 221, 602 P2d 681 (1979).

Defendant's final contention is that the court erred in not suppressing Craig's in-court identification on the ground that it was tainted by an unduly suggestive photographic display. He argues the first photo throwdown was suggestive, because all the photographs depicted men with beards and mustaches. He contends that because Craig was unsure whether the robber had facial hair, the first group of photographs should have included clean shaven men in order for Craig to decide on his own whether the robber had facial hair. He argues that by the time the detective assembled the first photographic display, defendant was a prime suspect, and, consequently, a display depicting bearded men suggested to Craig that he was wrong in his first description of the suspect. He also argues that, because defendant's picture was the only one common to both photographic displays, that impermissibly suggested to Craig that the police desired him to identify the defendant.

■ The question of whether a pretrial identification procedure is so suggestive that it destroys the reliability of

an in-court identification by the witness is a question of law to be decided by the trial court on the circumstances of the identification procedure. *State v. Classen,* 285 Or 221, 590 P2d 1198 (1979). In *Classen,* the court set out guidelines for judging the admissibility of identification evidence.

"\* \* \* First, the court must determine whether the process leading to the offered identification was suggestive or needlessly departed from procedures prescribed to avoid such suggestiveness. If so, then the prosecution must satisfy the court that 'the proffered identification has a source independent of the suggestive confrontation' or photographic display, \* \* \* or that other aspects of the identification at the time it was made substantially exclude the risk that it resulted from the suggestive procedure." (Footnote omitted; citation omitted.) 285 Or at 232.

■ The trial court ruled that neither photographic display was unduly suggestive, because neither suggested to the victim one of the pictures was of the person who was a suspect. The court noted that, before Craig was shown the first photographic throwdown, he told Kohlmeyer that he recalled that the robber had a mustache and a goatee. Consequently, his memory in that respect could not have been affected by the subsequent photographic display. The fact that defendant's picture was the only one that appeared in both displays likewise could not have affected Craig's identification of defendant's picture in the second photographic throwdown because that fact was not known by him. In the latter display, he picked the second picture without viewing the balance of the display. The identification process was not unduly suggestive.

Affirmed.