Argued and submitted January 3, reversed September 11, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# DAVID WAYNE MEYER,
*Appellant.*

## DO77898; A113345

53 P3d 940

Jonathan R. Gill argued the cause for appellant. With him on the brief was Hicks & Meyer, P.L.L.C.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Schuman, Judge.

DEITS, C. J.

## DEITS, C. J.

Defendant was cited for the traffic violation of violating the basic speed rule. ORS 811.100. He requested a trial. ORS 153.061(2). In that proceeding, after the presentation of the state's evidence, defendant moved to dismiss the case on the ground that the Oregon State Police officer who issued the citation neither stopped nor cited him until after he and the officer had crossed the Interstate 5 (I-5) bridge into the State of Washington. The trial court denied the motion. Defendant was convicted, and he appeals. We reverse.

■ On August 15, 2000, Oregon State Police Officer Johnson was stationed in his patrol car in a construction zone on a portion of the I-5 bridge within Multnomah County, Oregon.[1] The speed limit in the construction zone was 45 miles per hour. Johnson observed defendant traveling north through the zone at 66 miles per hour. He followed defendant across the bridge into the State of Washington but, for safety reasons, he did not activate his overhead lights or otherwise indicate that he was stopping defendant until defendant had reached an exit on the Washington side of the bridge.[2] After stopping and contacting defendant, Johnson cited him for violating the basic speed rule.

At the violation proceeding, ORS chapter 153, Johnson testified regarding his stop and citation of defendant. Following that testimony, defendant's counsel moved for dismissal on the ground that, under the Uniform Act on Fresh Pursuit (discussed below), a police officer's authority to pursue a person into another state's territory is limited to pursuit of a person who has committed a felony or who the officer reasonably suspects or has reasonable ground to believe has committed a felony. Defense counsel stated, "I just didn't hear that in this testimony."

The trial court asked Johnson to respond to the motion.[3] Johnson explained that he "actually initiated" the

---

[1] The State of Oregon has concurrent jurisdiction with the State of Washington over bridges that cross the Columbia River. *State v. Nearing*, 99 Or App 724, 784 P2d 121 (1989), *rev den* 309 Or 698 (1990).

[2] Johnson testified at the hearing that his actions in stopping defendant were consistent with Oregon State Police policy.

[3] A district attorney did not appear at the hearing. Under ORS 153.083, a police officer who issues a citation for a traffic offense may, at the proceeding on the

stop of defendant "when I pulled out behind the vehicle,"[4] that he did not activate his overhead lights "for safety concerns and other traffic," and that, in making "custodial arrests or anything like that," the police "contact either Vancouver P.D. or Washington State Patrol."[5] He stated, "It is my understanding that we are authorized to issue citations, just not custodial arrests." The trial court reserved its ruling on defendant's motion.

Defendant then testified regarding the incident. He stated that he had been traveling in the left lane of the highway; that the construction zone had required him to merge into the middle lane; that, due to the amount of traffic in the middle lane, he had been obligated to accelerate briefly in order to complete the merge; and that he did not believe that he could have accomplished the merge by braking instead of accelerating.

The trial court took the case under advisement. On January 23, 2001, defendant submitted a supplemental memorandum to the court, asserting, among other arguments, that *State v. Pepper*, 105 Or App 107, 803 P2d 1213 (1990), supported dismissal of the case, because nothing in the record indicated that Johnson had suspected that defendant had committed a felony.[6]

The trial court concluded that Johnson's stop and citation of defendant was authorized under ORS 810.410(2), providing in part that a police officer "may issue a citation to

citation, present evidence, examine and cross-examine witnesses, and make arguments relating to specified issues.

[4] Nothing in the record indicates that Johnson's actions were not based on legitimate safety concerns.

[5] On appeal, the state does not argue that Johnson initiated his stop of defendant within the State of Oregon.

[6] In *Pepper*, the defendant appealed his convictions for "various misdemeanors and traffic offenses," arguing that the trial court erred in denying his pretrial motion to suppress evidence seized incident to his arrest in the State of Washington for offenses committed in Oregon. In a per curiam opinion, this court reversed and remanded, summarily concluding that "the state points to no authority for the arrest" and that the case presented "[n]o issue of concurrent jurisdiction." 105 Or App at 108. Judge Riggs specially concurred, reasoning that, under *Nearing*, Oregon had concurrent jurisdiction over the offense, but that *Nearing* was wrongly decided and that the officer lacked authority under Washington's version of the Uniform Act on Fresh Pursuit.

a person for a traffic violation at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act: (a) When the traffic violation is committed in the officer's presence[.]" The trial court also found by a preponderance of the evidence, ORS 153.076(2), that defendant had committed the traffic violation of violating the basic speed rule. The court entered a judgment of conviction and fine.

On appeal, defendant challenges the trial court's ruling that Johnson was authorized to stop and cite him.[7] He argues that, although the complaint alleged that he committed the infraction in Oregon, the officer did not, as a factual or legal matter, initiate the stop until he and defendant were in Washington. He contends that the trial court's conclusion that ORS 810.410(2)(a) authorizes police officers to enter the State of Washington to effectuate a traffic stop not only violates the statutory standards established in Washington's version of the Uniform Act on Fresh Pursuit, RCW 10.89.010, but also contravenes constitutional limitations on one state's intrusion into another state's sovereign territory.

The state responds that the trial court properly denied defendant's motion to dismiss because, as a procedural matter, no law authorizes a court to dismiss a traffic violation citation on the ground that a police officer lacked authority to stop and cite a person for the violation. According to the state, the proper procedural mechanism for challenging the officer's authority to stop and cite defendant in the State of Washington was through a motion to suppress evidence resulting from the stop. The state also contends that defendant cannot now challenge the trial court's reliance on ORS 810.410(2)(a), because he failed to raise any argument relating to that statute in the trial court. Finally, the state contends that the trial court had subject-matter jurisdiction over the case and that the evidence established that defendant committed the violation.

We are bound by the trial court's findings of fact so long as they are supported by evidence in the record. *State v.*

---

[7] Defendant does not assign error to the trial court's finding, based on a preponderance of the evidence, that he committed the traffic violation.

*Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the court's legal conclusions for errors of law. *Id.*

█        As an initial matter, we do not agree that, in order to challenge Johnson's authority to stop and cite him in the State of Washington, defendant was required to move to suppress evidence resulting from the stop. As described above, Johnson observed defendant speeding in a construction zone on the Oregon side of the I-5 bridge. Johnson then began following defendant; however, he did not activate his overhead lights or otherwise indicate that he was stopping defendant until he and defendant had reached an exit on the Washington side of the bridge. Under those facts, even assuming that Johnson's stop of defendant was unlawful, the evidence of defendant's crime was not a *product* of that unlawful stop. Rather, Johnson had already observed the relevant evidence of defendant's conduct before the stop occurred. Because defendant's challenge is not to evidence obtained *after* unlawful police action, but to the officer's authority in the first instance to stop and cite him, defendant was not required to move to suppress evidence. *See State v. Smith*, 327 Or 366, 379-80, 963 P2d 642 (1998) (under Article I, section 9, of the Oregon Constitution, "the Oregon exclusionary rule exists to vindicate a personal right to be free from unlawful searches and seizures. To support *that* purpose, it is sufficient to suppress only evidence that is *actually obtained* out of an illegal search or seizure. * * * The mere fact that evidence was discovered after [the officer's] unlawful conduct does not require suppression.") (citations omitted; emphasis in original). *Compare Pepper*, 105 Or App at 108 (evidence was seized "incident to [the defendant's unlawful] arrest"), *with State v. Berg*, 60 Or App 142, 146-47, 652 P2d 1272 (1982) (under ORS 133.235 (1979), although a Linn County police officer lacked authority to arrest the defendants in Benton County, the evidence resulting from the officer's earlier search of the defendants' automobile need not be suppressed, because that evidence was not the result of the unauthorized arrest).

We also conclude that it is unnecessary to identify a particular procedural mechanism by which defendant was authorized or required to make his challenge. Again, following presentation of the state's evidence—showing that, in

pursuing defendant into the State of Washington, Johnson had not acted on a belief that defendant had committed a felony or that he was driving under the influence of intoxicants or recklessly—defendant asserted, by way of a motion to dismiss, that Johnson lacked authority to stop and cite him in that state and that the resulting citation therefore was, in effect, void *ab initio*. In doing so, defendant fairly put before the trial court the substance of his challenge to the citation. Moreover, because defendant's motion relied in part on the state's evidence relating to Johnson's reason for stopping defendant, the motion was timely. Under those circumstances, we decline to hold that the possible failure of defendant's motion to readily fit into any particular procedural pigeonhole divests him of any opportunity to be heard on that issue.

■ As noted, the state also asserts that defendant cannot now challenge the trial court's reliance on ORS 810.410(2)(a) because he failed to present any argument relating to that statute to the trial court. We disagree with that contention as well. In the violation proceeding, the state did not rely on ORS 810.410(2)(a) for the officer's authority, and the trial court first identified that statute in its written judgment of conviction. Defendant therefore had no reason or opportunity below to dispute the applicability of ORS 810.410(2)(a). In any event, relying in part on the fresh pursuit statute, defendant raised below the *issue* of Johnson's lack of authority. Under *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988), that was enough. Moreover, in addressing defendant's arguments on appeal regarding ORS 810.410(2)(a), we necessarily resort to those sources of law bearing on its proper meaning. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

We turn to the question whether the trial court erred in denying defendant's motion to dismiss. Again, the trial court concluded that ORS 810.410(2)(a) authorized Johnson to stop and cite defendant after he and defendant had crossed the I-5 bridge into the State of Washington. Whether that conclusion is correct involves a question of statutory interpretation to which we apply the methodology established in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859

P2d 1143 (1993). We begin with the text of the statute. Again, ORS 810.410(2) provides, in part:

> "A police officer may issue a citation to a person for a traffic violation *at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act*:
>
> "(a)   When the traffic violation is committed in the police officer's presence[.]" (Emphasis added.)

By its terms, ORS 810.410(2)(a) does not expressly limit the phrase "at any place * * * outside the jurisdictional authority" of the police officer to places within the territorial boundaries of the State of Oregon. Accordingly, viewed in isolation, the text of ORS 810.410(2)(a) appears to authorize the actions of the officer here.

At the first level of analysis, we also consider the context of the statute, including related statutory provisions, applicable case law interpreting those other provisions, and prior legislative changes. *Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996). ORS 133.410 *et seq.* establishes Oregon's version of the Uniform Act on Fresh Pursuit. ORS 133.430(1) provides:

> "Any member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest the person on the ground that the person is believed to have committed a felony in the other state has the same authority to arrest and hold such person in custody as has any member of any duly organized state, county or municipal peace unit of this state to arrest and hold in custody a person on the ground that the person is believed to have committed a felony in this state."

The State of Washington has adopted an equivalent provision, conferring on members of duly organized peace units of other states the authority to enter into and continue within the State of Washington in fresh pursuit of a person who the officer believes has committed a felony, as well as a person who the officer believes has committed "a violation of the laws of such other state relating to driving while intoxicated, driving under the influence of drugs or alcohol, driving while

impaired, or reckless driving." RCW 10.89.010; *see also State v. Barker*, 143 Wash 2d 915, 920 n 1, 25 P3d 423, 425 n 1 (2001) ("In 1998, the Legislature amended the Uniform Act on Fresh Pursuit, and as a result officers from other jurisdictions are now clearly authorized to pursue persons into this state when they are believed to have committed certain traffic offenses, including driving while under the influence of intoxicants and reckless driving."). Thus, both Oregon and Washington expressly permit officers from other states to enter their respective state territories for the purpose of pursuing persons who reasonably are believed to have committed specified offenses—felonies and, for entry into Washington, specified traffic offenses—in the other state.

As pertinent to our understanding of ORS 810.410(2)(a), ORS 133.430(1) refers to "this state." The use of that phrase demonstrates that the legislature knows how to refer to a state's geographical territory. The fact that the legislature did not do so in ORS 810.410(2)(a) therefore suggests that the phrase "outside the jurisdiction" in the latter statute includes territory outside the state. *See PGE*, 317 Or at 611 (use of a term in one provision and not in another indicates a deliberate omission).

■ Another aspect of ORS 133.430(1) is to the opposite effect, however. The Uniform Act on Fresh Pursuit, including Oregon's version of that model act, consists of a grant of authority *from the enacting state to officers from other states*, permitting those officers to enter the enacting state. Conversely, the uniform act is not stated in terms of authorizing the enacting state's own officers to enter another state. That formulation is consistent with the well-established principle that the legislative acts of a state ordinarily are not operative outside the territorial boundaries of the enacting state. *See State ex rel Juv. Dept. v. Casteel*, 18 Or App 70, 75, 523 P2d 1039 (1974) ("It is axiomatic that the laws of a state have no extraterritorial effect.") (citing *Deardorf v. Idaho Nat. Harvester Co.*, 90 Or 425, 433, 177 P 33 (1918)); *see also Swift & Co. and Armour & Co. v. Peterson*, 192 Or 97, 121, 233 P2d 216 (1951) ("No legislation is presumed to be intended to operate outside of the jurisdiction of the state enacting it. In fact, a contrary presumption prevails and statutes are generally so construed.") (citing *Sandberg v. McDonald*, 248 US

185, 39 S Ct 84, 63 L Ed 200 (1918)). The Oregon legislature's apparent recognition of that principle in enacting ORS 133.430(1) suggests that, when it enacted ORS 810.410(2)(a), conferring on Oregon officers the authority to cite a person for a traffic violation "at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act," it did not intend that authority to extend outside the territorial boundaries of this state.

ORS 133.430(1) also suggests a somewhat less restrictive result by way of a different analytical route. Under ORS 174.010, "where there are several provisions or particulars[,] such construction is, if possible, to be adopted as will give effect to all." Here, in ORS 810.410(2)(a), the Oregon legislature has broadly authorized officers to issue citations "at any place within or outside" the officers' jurisdictional authority. In addition, as discussed above, in ORS 133.430(1), the legislature has affirmatively established limitations on the authority of officers of other states to come into this state. Implicit in the latter act—Oregon's version of a uniform act—is the reciprocal understanding that Oregon officers can enter another state only if authorized by that state. Reading ORS 810.410(2)(a) and ORS 133.430(1) (as well the latter's equivalent provisions in other states) together in a manner that gives effect to all, it is reasonable to understand ORS 810.410(2)(a) as conferring on Oregon officers only that measure of authority to enter another state that does not contravene the latter state's version, if any, of the Uniform Act on Fresh Pursuit or other equivalent authority.

Because the text and context do not definitively answer the question presented, we also have considered the legislative history of ORS 810.410(2)(a). The disputed language first appeared in 1959 Senate Bill 484, providing for uniform traffic citations and other traffic-related matters. Or Laws 1959, ch 664, § 7 (codified at *former* ORS 484.100, *repealed by* Or Laws 1983, ch 338, § 978). Section 7 of that bill provided:

"(1)  A police officer may arrest a person for a traffic offense at any place within the jurisdictional authority of

the governmental unit by whom [the officer] is authorized to act.

"(2)  A police officer may arrest a person for a traffic offense at a place *outside the jurisdictional authority of the governmental unit* by whom [the officer] is authorized to act if:

"(a)  A traffic offense was committed in [the officer's] presence at a place within the jurisdictional authority of the governmental unit; and

"(b)  The officer immediately pursues the person who committed the offense in an attempt to arrest [the person]; and

"(c)  The officer arrests the person immediately upon the conclusion of a continuous pursuit." (Emphasis added.)

The legislative history of Senate Bill 484 does not disclose any specific discussion of the intended meaning of the emphasized phrase. However, on several occasions, legislative committee members referred to section 7 as including a "fresh pursuit" provision. *See* Minutes, Senate Judiciary Committee, March 19, 1959, pp 1-2 (statement of Senator Lewis); Minutes, Senate Judiciary Committee, March 30, 1959, p 2 (question by witness Professor Geoffrey C. Hazzard and response of committee members relating to inclusion in bill of provision for "fresh" or "hot" pursuit). Legislators are deemed to be aware of existing law, which, at the time the legislature was considering Senate Bill 484, included the Uniform Act on Fresh Pursuit, ORS 133.410 *et seq.* (1959).[8] Because the legislature presumably was aware of Oregon's already-existing provisions addressing the authority of officers in "fresh pursuit" of a person to enter another state— which, moreover, uniformly were enacted, including in Oregon, in terms of the authority of officers of other states to enter the enacting state—it can be inferred that the 1959 legislature did not intend section 7 of Senate Bill 484 to encompass that subject, but to encompass only the authority of officers to enter, in fresh pursuit, another local jurisdiction within Oregon.

---

[8] The Uniform Act on Fresh Pursuit was first adopted in 1937. Or Laws 1937, ch 35, §§ 1-5, 8 (originally codified as OCLA §§ 26-1541 through 26-1546).

Alternatively, the 1959 legislature's references to section 7 of Senate Bill 484 as relating to "fresh pursuit" can be viewed as evidence that the legislature intended ORS 810.410(2)(a) to implement the various states' already-existing fresh pursuit statutes, by providing affirmative authority for Oregon officers to utilize the authority conferred by those other states' statutes. Under that understanding of the legislature's intent, the phrase "any place * * * outside the jurisdictional authority" of an Oregon peace officer can include a "place" in another state, but only to the extent that the other state authorizes such entry by its own version of the Uniform Act on Fresh Pursuit. Thus, the legislative history of ORS 810.410(2)(a) also indicates that, at most, an officer is authorized to issue a traffic violation citation to a person in another state if, and only if, the officer's pursuit of the person into that state is consistent with the state's own fresh pursuit statute or its equivalent.

■    Finally, because our examination of the text, context, and legislative history of ORS 810.410(2)(a) has not clearly disclosed its meaning, we also "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *PGE*, 317 Or at 612; *State ex rel Juv. Dept. v. Kopp*, 180 Or App 566, 576, 43 P3d 1197 (2002). Two such principles are applicable here. First, as discussed above, it is well settled that a state's legislative enactments have effect only within the state's territory. That constraint suggests that, in enacting ORS 810.410(2)(a), the Oregon legislature did not intend its grant of authority to Oregon officers to issue traffic violation citations to extend outside the State of Oregon. Second, "when one plausible construction of a statute is constitutional and another plausible construction of a statute is unconstitutional, courts will assume that the legislature intended the constitutional meaning." *State v. Kitzman*, 323 Or 589, 602, 920 P2d 134 (1996). As applicable here, that principle suggests that the Oregon legislature did not intend ORS 810.410(2)(a) to operate in a manner that would abrogate the territorial sovereignty of another state beyond what that other state itself permits. *See Pepper*, 105 Or App at 120 (Riggs, J., specially concurring) (recognizing "our system of federalism, which includes states that are sovereign *vis-à-vis* each other"). Thus, like our examination of

the context and legislative history of ORS 810.410(2)(a), application of those maxims indicates that, at most, ORS 810.410(2)(a) authorizes Oregon officers to issue traffic violation citations in a state outside the State of Oregon, but only if that action is authorized by the other state.

■     Again, here, Johnson stopped and cited defendant in Washington for the traffic violation of violating the basic speed rule. Under RCW 10.89.010, an officer from another state, including Oregon, may pursue into the State of Washington a person who the officer believes has committed a felony or "a violation of the laws of such other state relating to driving while intoxicated, driving under the influence of drugs or alcohol, driving while impaired, or reckless driving." Accordingly, even assuming that ORS 810.410(2)(a) authorizes Oregon officers to issue traffic violation citations in other states, it did not authorize the issuance of the citation at issue here. Nor has the state identified any other authority for Johnson's action. We decline to exercise our discretion to affirm the trial court on another ground. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) ("right for the wrong reason" principle permits reviewing court, as a matter of discretion, to affirm the ruling of a lower court on an alternative basis). The trial court erred in denying defendant's motion to dismiss the citation.

Reversed.