Argued and submitted November 16, 2010, reversed and remanded March 30, 2011

# STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

# PATRICK WILLIAM WELLER,
*Defendant-Respondent.*

Clatsop County Circuit Court
077312; A140409

250 P3d 979

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Kevin T. Lafky argued the cause for respondent. With him on the brief was Scott Howell.

Before Haselton, Presiding Judge, and Duncan, Judge, and Gillette, Senior Judge.

DUNCAN, J.

**DUNCAN, J.**

This is a criminal case in which the state appeals the trial court's dismissal of the charges against defendant. The state charged defendant with one count of reckless driving, ORS 811.140, and two counts of recklessly endangering another person, ORS 163.195, for speeding on the Astoria-Megler Bridge between Oregon and Washington. Defendant filed a motion to dismiss the case on the ground that the Oregon police officer who arrested him in Washington violated Washington's Fresh Pursuit Act[1] (the Act) by bringing him back to Oregon without first presenting him to a Washington magistrate for a hearing on the lawfulness of the arrest. Defendant argued that the officer's violation of the Act constituted a due process violation under the Fourteenth Amendment to the United States Constitution.[2] The trial court agreed and granted defendant's motion to dismiss, concluding that the officer had violated the Act and that the violation "represented a denial of due process" that "[could ]not be condoned." The trial court explained that, although "dismissal of [defendant's] case may seem a harsh result," there was "no other suitable remedy given the violation of [d]efendant's basic constitutional rights."

On appeal, the state does not dispute that the officer violated the Act but contends that that violation does not constitute a due process violation that requires dismissal of the charges against defendant. For the reasons explained below, we agree and, therefore, reverse and remand.

We begin with the facts. On August 31, 2007, Astoria Police Officer Ayet saw defendant driving northbound at a high rate of speed on the Astoria-Megler Bridge between Clatsop County, Oregon, and Pacific County, Washington.

---

[1] Washington's Fresh Pursuit Act provides, in part, that an officer from another state in fresh pursuit of a person suspected of a felony or certain driving offenses can arrest the person in Washington and that, if an officer does so, the officer must take the person before a Washington magistrate for a hearing to determine the lawfulness of the arrest. The relevant provisions of the Act are set forth below. 241 Or App at 694.

[2] The Fourteenth Amendment to the United States Constitution provides, in part, "No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]"

The speed limit on the bridge is 55 miles per hour. Using radar, Ayet determined that defendant was driving at 121 miles per hour. While on the Oregon side of the bridge, Ayet activated his patrol car's overhead lights to stop defendant. Ayet believed defendant was not simply violating Oregon's speeding statute, ORS 811.100, but was also violating Oregon's reckless driving statute, ORS 811.140.

The bridge is a two-lane road with no shoulder, and defendant was not able to pull over safely until he was off the bridge in Washington. Ayet pulled over behind defendant's car and approached defendant. Ayet informed defendant of the reason for the stop and observed that defendant had two passengers in his car.

Ayet called a Clatsop County prosecutor to ask whether he could bring defendant back to Oregon. Ayet testified that he called the prosecutor because it is "a tangled mess when you cross the bridge, and I wanted to make sure whether I could bring [defendant] back, whether I had to give him a ticket there, whether I had to turn him over to a Washington trooper, or Pacific County." The deputy district attorney told Ayet that he could bring defendant back to Oregon. Ayet arrested defendant and put him in his patrol car. With defendant's permission, Ayet released defendant's car to defendant's passengers. Ayet then brought defendant to the Clatsop County Jail, with the intent that defendant would be processed, cited, and released.

The Clatsop County District Attorney's Office charged defendant by information with one count of reckless driving and two counts of recklessly endangering another person. Defendant filed a motion to suppress evidence and dismiss the case, arguing that Ayet violated his due process rights by violating Washington's Fresh Pursuit Act. As noted, the Act provides, in part, that an officer who is in fresh pursuit of a person suspected of a felony or certain driving crimes, including reckless driving, can arrest the person in Washington, RCW 10.89.010, and, if the officer does so, then the officer has to take the person to a magistrate for a hearing on the lawfulness of the arrest, RCW 10.89.020.

■    Specifically, RCW 10.89.010 provides:

"Any member of a duly organized state, county or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest the person on the ground that he or she is believed to have committed a felony in such other state or a violation of the laws of such other state relating to driving while intoxicated, driving under the influence of drugs or alcohol, driving while impaired, or reckless driving shall have the same authority to arrest and hold such person in custody as has any member of any duly organized state, county or municipal peace unit of this state, to arrest and hold in custody a person on the ground that he or she is believed to have committed a felony or a violation of the laws of such other state relating to driving while intoxicated, driving under the influence of drugs or alcohol, driving while impaired, or reckless driving in this state."

RCW 10.89.020, in turn, provides:

"If an arrest is made in this state by an officer of another state in accordance with the provisions of RCW 10.89.010, he shall, without unnecessary delay, take the person arrested before a magistrate of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the magistrate determines that the arrest was lawful, he shall commit the person arrested to await for a reasonable time the issuance of an extradition warrant by the governor of this state. If the magistrate determines that the arrest was unlawful, he shall discharge the person arrested."

Defendant argued that Ayet violated RCW 10.89.020 and, thereby, violated his due process rights. Specifically, defendant argued that the police "essentially kidnapped him and brought him back to the [S]tate of Oregon, without affording him the due process that Washington allows" and that that amounted to a violation of his due process rights.

As noted, the trial court concluded that Ayet had authority to stop and arrest defendant in Washington under RCW 10.89.010, but that Ayet violated RCW 10.89.020 when he failed to bring defendant before a magistrate for a hearing

on the lawfulness of the arrest. The court further concluded that the violation of RCW 10.89.020 constituted a due process violation. The court set out its findings and conclusions in a letter opinion, stating:

"6. Sgt. [Ayet] had the authority under Washington's 'fresh pursuit' statute to enter into Washington for the purpose of pursuing Defendant and arresting him for the crime of Reckless Driving. RCW 10.89.010 and 10.89.020. Sgt. [Ayet's] stop of Defendant in Washington for the crime of Reckless Driving was lawful.

"7. Sgt. [Ayet] did not comply with the provisions of RCW 10.89.020 which require that he take Defendant before a magistrate of Pacific County, Washington, for the purpose of determining the lawfulness of the arrest.

"* * * * *

"[T]he failure to take Defendant before a magistrate to determine the lawfulness of his arrest, when clearly required to do so, is more than a mere statutory violation. It represented a denial of due process and cannot be condoned. Defendant's potentially dangerous conduct and a dismissal of his case may seem a harsh result, but I can find no other suitable remedy given the violation of Defendant's basic constitutional rights."

On appeal, the state challenges the trial court's determination that Ayet's violation of RCW 10.89.020 constituted a violation of defendant's due process rights that required dismissal of the charges. We review the trial court's determination for errors of law. *See State v. Nelson,* 166 Or App 189, 193, 999 P2d 1161 (2000) (reviewing dismissal for due process violation for errors of law). We reverse on the ground that, under controlling case law, irregularities—indeed, illegalities—in the manner in which a defendant is physically brought into a jurisdiction do not, in and of themselves, constitute due process violations that require the dismissal of the charges against the defendant.

The Supreme Court first so held in *Ker v. Illinois,* 119 US 436, 444, 7 S Ct 225, 30 L Ed 421 (1886). In *Ker,* the defendant was forcibly removed from Peru and brought to Illinois to face criminal charges. The Supreme Court acknowledged that the manner in which the defendant was

captured and transported "was a clear case of kidnapping within the dominions of Peru," *id.* at 443, but rejected the defendant's claim that his due process rights had been violated, *id.* at 440. The Court explained:

> "The 'due process of law' here guaranteed is complied with when the party is regularly indicted by the proper grand jury in the State court, has a trial according to the forms and modes prescribed for such trials, and when, in that trial and proceedings, he is deprived of no rights to which he is lawfully entitled."

*Id.* at 440. The Court specifically rejected the defendant's argument that his kidnapping required the dismissal of the charges against him:

> "There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offence, and presents no valid objection to his trial in such court."

*Id.* at 444.

The Supreme Court affirmed the *Ker* rule in *Frisbie v. Collins*, 342 US 519, 72 S Ct 509, 96 L Ed 541, *reh'g den*, 343 US 937 (1952). In *Frisbie*, a habeas corpus case, the petitioner argued that his due process rights were violated when Michigan police officers forcibly transported him from Illinois to Michigan to face criminal charges and that the due process violation nullified his subsequent conviction and sentence. The Court rejected the petitioner's arguments, explaining:

> "This Court has never departed from the rule announced in *Ker v. Illinois*, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards."

*Id.* at 522 (citation and footnote omitted).

More recently, the Supreme Court affirmed the *Ker* rule in *United States v. Alvarez-Machain*, 504 US 655, 665, 112 S Ct 2188, 119 L Ed 2d 441 (1992), a criminal case in which the defendant moved to dismiss the indictment on the ground that United States law enforcement officers arranged for his forcible abduction from Mexico to the United States to face criminal charges. The defendant argued that his abduction constituted "outrageous governmental conduct, and that the District Court lacked jurisdiction to try him because he was abducted in violation of the extradition treaty between the United States and Mexico." *Id.* at 658. The Court rejected the defendant's arguments, holding that the treaty did not, expressly or implicitly, provide "the only way in which one country may gain custody of a national of the other country for the purposes of prosecution." *Id.* at 664. In other words, the Court held that, although the treaty governed one means of bringing a person from one country to the other to face criminal charges (extradition), it did not prohibit other means of doing so (including forcible abduction). *Id.* at 668-69. Therefore, the Court concluded, the defendant's abduction did not violate the treaty. The Court further concluded that, because the defendant's abduction did not violate the treaty, "the rule of *Ker v. Illinois* [was] fully applicable." *Id.* at 670. The Court noted that the defendant's abduction may have been "shocking" and "in violation of general international law principles," but it did not "prohibit his trial in a court in the United States for violations of the criminal laws of the United States." *Id.* at 669-70.

This court followed *Ker* and *Alvarez-Machain* in *State v. Aydiner*, 228 Or App 282, 208 P3d 515, *rev den*, 347 Or 259 (2009), *cert den*, ___ US ___ , 131 S Ct 530 (2010).[3] In *Aydiner*, the defendant was indicted for several crimes, including aggravated murder, a capital offense. At the time of

---

[3] Oregon courts also applied the *Ker* rule prior to *Aydiner. See, e.g., State v. Fox*, 250 Or 83, 85, 439 P2d 1009, *cert den*, 393 US 891 (1968) (citing *Ker* and *Frisbie* in rejecting the defendant's Oregon constitutional claims and holding that "the jurisdiction of the trial court was not impaired by any defect in the proceedings by which defendant was brought into Oregon for trial"); *State v. Wertheimer*, 6 Or App 507, 509, 488 P2d 1199 (1971) (rejecting, under *Fox* and *Frisbie*, the defendant's "arguments with reference to his motion on jurisdiction and motion to dismiss the indictment * * * based upon his claim that he was illegally extradited or taken from Minnesota to Oregon for this trial").

the indictment, the defendant was in his native Turkey and unaware of the charges. He sought to return to the United States to be with his wife, a United States citizen. Because the defendant had overstayed his prior visit, the federal government initially denied him reentry. But, at the state's request, the federal government reversed its position and allowed the defendant to return. The defendant, who was still unaware of the charges against him, believed he had been granted a waiver to return. After flying from Turkey to Oregon, the defendant was arrested at the airport and held for trial. *Id.* at 284.

The defendant moved to dismiss the state's case, arguing that the state's use of "trickery and deceit" violated the extradition treaty between Turkey and the United States, as well as his due process rights. *Id.* at 285. The trial court denied the defendant's motion, and he was subsequently convicted.

On appeal, the defendant challenged the trial court's denial of his motion to dismiss. Relying on *Alvarez-Machain*, this court held that the alleged "trickery and deceit" did not violate the extradition treaty between Turkey and the United States because, as in *Alvarez-Machain*, "the treaty did not intend the extradition process to be exclusive." *Aydiner*, 228 Or App at 289. We further held that, under *Ker* and *Alvarez-Machain*, the "trickery and deceit" "did not violate [the defendant's] right to due process." *Id.* at 290.

In this case, there is no dispute that Ayet violated RCW 10.89.020 when he brought defendant back to Oregon without first taking him to a magistrate for a hearing on the lawfulness of his arrest. But, under *Ker* and its progeny, that violation is not a basis for dismissal of the charges against defendant. It does not bar his prosecution in Oregon. If, as *Ker* establishes, forcibly abducting a person from Peru to face criminal charges does not constitute a due process violation that requires dismissal of criminal charges, we cannot say that bringing a person back across the Astoria-Megler Bridge does.

*State v. Meyer*, 183 Or App 536, 53 P3d 940 (2002), on which defendant relies, is not to the contrary. In *Meyer*, an Oregon police officer observed the defendant speeding on the

Oregon side of the Interstate 5 Bridge between Multnomah County, Oregon, and Clark County, Washington. The officer did not initiate a traffic stop until the defendant was on the Washington side of the bridge. After the defendant stopped, the officer issued him a citation for "violating the basic speed rule." *Id.* at 538. At the subsequent traffic violation trial, the defendant moved to dismiss the case on the ground that the officer did not have authority to stop and cite him in Washington. The trial court denied the motion and convicted the defendant.

On appeal, this court reversed. We held that the officer had no authority to stop or cite the defendant in Washington. Washington's Fresh Pursuit Act, we noted, authorizes pursuit and arrest of persons suspected of felonies and certain driving offenses, but those driving offenses do not include speeding. *Id.* at 548. We accepted the defendant's argument that the officer "lacked authority to stop and cite him in [Washington] and that the resulting citation therefore was, in effect, void *ab initio.*" *Id.* at 542.

That is not the case here. Defendant does not argue that Ayet lacked the authority to stop him or that the state lacked the authority to charge him, either by citation or information. In other words, he does not argue that the state proceeded on a charging instrument that it had no authority to issue in the first place.

Instead, defendant argues that the charging instrument should be dismissed as a sanction for illegal conduct, specifically, Ayet's violation of RCW 10.89.020. But, as discussed above, Ayet's violation of RCW 10.89.020 is not a due process violation that requires dismissal of the charges, and defendant has not offered, and we are not aware of, any authority for the proposition that violation of a statute requiring an officer to bring a defendant before a magistrate in a timely manner requires dismissal of the charges. To the contrary, we have held that violations of statutes requiring a timely arraignment do not result in dismissal. *See, e.g., State v. Nation,* 54 Or App 929, 636 P2d 1001 (1981), *rev den,* 292 Or 568 (1982) (neither dismissal nor suppression was appropriate in case where defendant arraigned three hours later than statute required); *State v. Jenks,* 43 Or App 221, 602

P2d 681 (1979) (violation of speedy arraignment statute does not bar prosecution).

In sum, although Ayet violated RCW 10.89.020 when he failed to bring defendant before a magistrate for a hearing on the lawfulness of his arrest, that violation is not a basis, under the due process clause or *Meyer*, for dismissal of the charges against defendant. The trial court erred in concluding otherwise.

Reversed and remanded.