Argued and submitted June 18, 2014, conviction for interfering with a peace officer reversed, otherwise affirmed June 8, petition for review allowed September 15, 2016 (360 Or 400)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CATHERINE E. GARCIA,
*Defendant-Appellant.*

Multnomah County Circuit Court
120545265; A152842

377 P3d 596

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Flynn, Judge, and Edmonds, Senior Judge.*

---

* Flynn, J., *vice* Wollheim, S. J.

**DUNCAN, P. J.**

Defendant appeals the trial court's judgment convicting her of interfering with a peace officer (IPO). The IPO statute, ORS 162.247,[1] provides that it "does not apply in situations in which the person is engaging in * * * activity that would constitute resisting arrest under ORS 162.315[.]"[2] On appeal, defendant asserts that the trial court erred by submitting the IPO count to the jury, because the state had charged her with IPO and resisting arrest based on the same conduct. For the reasons explained below, we agree, and, therefore, we reverse defendant's IPO conviction.

---

[1] ORS 162.247 provides:

"(1) A person commits the crime of interfering with a peace officer or parole and probation officer if the person, knowing that another person is a peace officer or a parole and probation officer as defined in ORS 181A.355:

"(a) Intentionally acts in a manner that prevents, or attempts to prevent, a peace officer or parole and probation officer from performing the lawful duties of the officer with regards to another person; or

"(b) Refuses to obey a lawful order by the peace officer or parole and probation officer.

"(2) Interfering with a peace officer or parole and probation officer is a Class A misdemeanor.

*"(3) This section does not apply in situations in which the person is engaging in:*

*"(a) Activity that would constitute resisting arrest under ORS 162.315; or*

*"(b) Passive resistance."*

(Emphasis added.)

[2] ORS 162.315 provides, in pertinent part:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"(2) As used in this section:

"(a) 'Arrest' has the meaning given that term in ORS 133.005 * * *.

"* * * * *

"(c) 'Resists' means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes, but is not limited to, behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to an officer. Passive resistance does not constitute behavior intended to prevent being taken into custody."

ORS 133.005 defines "[a]rrest" as "to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense." Under ORS 162.315, an individual can resist the arrest of another. *State v. Brandon*, 35 Or App 661, 663, 582 P2d 52 (1978).

## HISTORICAL AND PROCEDURAL FACTS

Defendant and her boyfriend, Storaasli, partici-pated in a political march in Portland. After the marchers' permit expired, police officers ordered the marchers to move out of the street. Storaasli did not obey the order and offi-cers attempted to take him into custody. After the officers brought Storaasli to the ground, defendant ran toward him. One of the officers punched defendant in the chest. Defendant fell to the ground, got up, and continued toward Storaasli. Defendant jumped on Storaasli and wrapped her arms around him. The officers ordered defendant to "let go" of Storaasli, but she did not. Eventually, the officers were able to separate defendant from Storaasli and arrest both of them.

The state charged defendant with one count of second-degree disorderly conduct (Count 1), ORS 166.025, two counts of interfering with a peace officer (Counts 2 and 3), ORS 162.247, and one count of resisting arrest, ORS 162.315 (Count 4).

The two IPO counts were based on different para-graphs of the IPO statute. Count 2 was based on ORS 162.247(1)(b) and alleged that defendant "knowingly refuse[d] to obey a lawful order of [o]fficers." Count 3 was based on ORS 162.247(1)(a) and alleged that defendant "intentionally attempt[ed] to prevent [o]fficers *** from performing the officers' lawful duties with regard to another person[.]" The counts did not specify the conduct upon which they were based. Count 2 did not identify the "lawful order" that defendant had refused to obey, and Count 3 did not identify the "lawful duties" that defendant had interfered with.

The resisting arrest count alleged that defendant "intentionally resist[ed] [o]fficers *** in making an arrest[.]" It did not specify whose arrest.

At trial, the state's witnesses testified to the events described above. Through their testimony, it became clear that the two IPO counts and the resisting arrest count were based on the same conduct: defendant's intervention into Storaasli's arrest. The state's theory on the first IPO count,

Count 2, was that defendant had refused the officers' order to "let go" of Storaasli. Its theory on the second IPO count, Count 3, was that defendant had interfered with the officers' lawful duties to arrest Storaasli. And, its theory on the resisting arrest count, Count 4, was that defendant had resisted Storaasli's arrest, not her own. Regarding defendant's interference, one officer testified that he believed defendant had been trying to stop Storaasli's arrest and that he perceived her actions as "resist[ing] arrest." Another officer testified that, at one point, defendant yelled for other marchers to help her "unarrest" Storaasli. Both officers testified that defendant's actions prevented them from taking Storaasli into custody.

After the state presented its case-in-chief, defendant moved for a judgment of acquittal on the disorderly conduct count, Count 1, and the trial court granted the motion. Defendant also moved for a judgment of acquittal on the IPO counts, Counts 2 and 3. As noted, the crime of IPO is defined by ORS 162.247, which provides, in part:

> "(3) This section does not apply in situations in which the person is engaging in:
>
> "(a) Activity that would constitute resisting arrest under ORS 162.315; or
>
> "(b) Passive resistance."

Defendant argued that the trial court should not submit the IPO counts to the jury because the conduct upon which they were based constituted resisting arrest and passive resistance. Referring to both ORS 162.247(3)(a) and (b), she argued,

> "[U]nder both of these sections * * * the IPO statute * * * does not apply. The primary argument would be in subsection (3)([a]) that the State is, in fact, alleging that she is resisting arrest. I asked both officers specifically that specific language, this situation where she was engaging in this interference with your duties to Mr. Storaasli, was this an attempt to stop the arrest of Mr. Storaasli? And both witnesses affirmed this is the situation, this was all related to an attempt in their version for Mr. Storaalsi's arrest to be stopped by [defendant], her efforts to do that. And in this case the section simply does not apply.

"So for both of those counts, Your Honor, I would argue that the Court should not allow a jury to determine that, when the State's theory is that she was attempting to resist Mr. Storaasli['s] arrest."

In response, the state argued that the trial court should submit the IPO counts to the jury, even though they were based on the same conduct as the resisting arrest count. The state suggested that, if the jury found defendant guilty of the IPO counts and the resisting arrest count, there might be a "potential merger, or a potential sentencing issue." But, the state contended, "[i]f they find all three, find one not the other, that's a bridge we will have to cross when we get to the verdict."

The trial court denied defendant's motion.

After defendant presented her case, she renewed her motion for judgment of acquittal on the IPO counts, asserting:

"[T]he State wants to say [defendant] committed the crime of interfering with a peace officer, and has resisted arrest in the same situation.

"So, essentially, they are trying to prove both, and it goes to the idea that the State has to prove—the State has to choose at least their theory of the case. What the state is attempting to prove is * * * there was this resisting activity ongoing. But then they are also trying to prove that during that time period she failed to obey a lawful order and was interfering with the arrest of another person."

Defendant continued:

"I would again renew my motion for judgment of acquittal. I think this is the appropriate time for this to be granted, rather than arguing about how the jury should be instructed on this cascading series of, if you find this, then you can't find this, unless you also find something different, because at the end of the day, the verdict will potentially be confusing."

The state responded that the trial court should deny defendant's motion for judgment of acquittal, contending that such a motion was not the proper procedural mechanism for defendant to raise her challenge:

"With respect to defense's argument about what [the IPO statute] does not apply to, it's addressing a factual finding. It does not apply to conduct constituting resist[ing] arrest. That has to be—that conclusion has to be made by a trier of fact, not as a preemptory ruling by the Court through a motion for judgment of acquittal. * * * [M]y position in this respect is now, is I think about defendant's argument is that this is really a demurrer or a motion in arrest of judgment being presented to the Court through a motion for judgment of acquittal."

Defendant replied that she could not have raised her argument as a demurrer because it was not apparent from the charging instrument itself that the IPO counts were based on the same conduct as the resisting arrest count. Defendant also stated that, if a motion for judgment of acquittal was not appropriate, then she would make a motion to dismiss:

"If it would help, and I don't know, I will make up something new right now, and I will say, I will make a motion to dismiss under the—those charges under the—I'll say a motion to carry out the legislature's instruction in section (3) of the interfering with a peace officer statute[.] * * * So, I would make a motion to dismiss, * * * as well[.] * * * It doesn't need to be phrased as an acquittal, it could be phrased as an order."

The trial court deferred ruling on the matter. The next day, the state reiterated its position that the trial court should submit the IPO counts and the resisting arrest count to the jury:

"After reflection on the issue that's presented to the Court, it's still the State's position that the State should be permitted to have all the charges that are still pending, the two charges of interference with a peace officer and resisting arrest, * * * go [to] the jury."

The state confirmed that the IPO counts and the resisting arrest count were based on the same conduct, but maintained that they should all be submitted to the jury and that, if the jury found the defendant guilty of one or both of the IPO counts and the resisting arrest count, then the guilty verdicts might merge:

"The jury has the IPO for lawful order, they have the IPO for the lawful duties and resisting arrest. The jury can come back with any combination of those. If we play that out, if the jury were to find that defendant committed the offense of resisting arrest, and they found that the defendant committed the offense of interference with a peace officer, with respect to the lawful duties to another, or the lawful order, because we're dealing with all the same conduct which I'm not disagreeing with or trying to change my theory at this point, would essentially make the IPO charges subsumed by the jury's finding with respect to the resisting arrest. And, therefore, it may be, as I mentioned previously, a merger issue, a legal issue with respect to the Court's entry of judgment, because the jury has found, they could find factually, judge, that the defendant did commit the three offenses, but it would be left to the Court as a legal matter which charge to enter judgment on."

Thus, the state contended that it was not required to choose between the IPO counts and the resisting arrest count; it could proceed on all of them.

Defendant disagreed, asserting that the legislature intended to prohibit the state from charging IPO and resisting arrest based on the same conduct:

"Your Honor, * * * I have been trying to wrap my mind around how the State can take a position to say as they have * * * that [defendant] was resisting the arrest of Mr. Storaasli. And then simultaneously, maintain a charge that they know and have been instructed by the legislature, does not apply in situations where they think there was this resisting arrest activity. * * * I think it's actually the prosecutor's duty in a situation like that to charge what they are going to charge and follow the available laws."

The trial court denied defendant's motion and submitted the IPO counts and the resisting arrest count to the jury. The jury acquitted defendant of Count 2 (IPO for refusing to obey a lawful order) and Count 4 (resisting arrest), but convicted her of Count 3 (IPO for interfering with lawful duties). Consequently, Count 3 is the only count at issue on appeal.

## ARGUMENTS ON APPEAL

On appeal, defendant assigns error to the trial court's denial of her motion for judgment of acquittal on

Count 3. Defendant argues that the IPO statute prohibits the state from charging IPO and resisting arrest based on the same conduct. She further argues that, because the state's theory and evidence was that defendant committed IPO by resisting arrest, the trial court should not have submitted the IPO count to the jury.[3]

In response, the state argues that the IPO statute "does not preclude concurrent charges for both resisting arrest and IPO." The state further argues that, even if the IPO prohibits such charging, "a motion for judgment of acquittal is not the proper vehicle for raising that defect. Rather, the proper vehicle is a demurrer." The state also argues that the trial court properly submitted the IPO counts to the jury because "the 'resisting arrest' exception" to the IPO statute creates a "unique defense" that cannot be the basis for a motion for judgment of acquittal. The state reasons:

> "To grant a motion for judgment of acquittal on the basis of a defense, a court must conclude, as a matter of law, that it applies and that the evidence does not permit a jury to find defendant guilty. But the 'resisting arrest' exception asks whether the charged conduct was '[a]ctivity that would constitute resisting arrest under ORS 162.315.' *** Put differently, by granting a judgment of acquittal on the basis of that exception, a court would be ruling that no rational fact-finder could find the defendant innocent of resisting arrest, and would be ruling that she was guilty of that crime as a matter of law."

That, the state contends, would require the trial court to make a determination of guilt and, thereby, usurp the jury's role.

## ANALYSIS

The parties' arguments require us to interpret the IPO statute. To do so, we employ the interpretive method

---

[3] Defendant also argues that the trial court erred by rejecting her argument, made in the alternative, that the trial court should not have submitted Count 3 to the jury, because her conduct constituted passive resistance and, therefore, was excepted from the IPO statute by ORS 162.247(3)(b). Because we conclude that the trial court should not have submitted the IPO counts to the jury because they were based on the same conduct as the resisting arrest count, we need not, and do not, address defendant's alternative argument.

prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We look to the text and context of the statute, as well as any pertinent legislative history. *Gaines*, 346 Or at 171-72.

We begin with the text at issue. As set out above, ORS 162.247(3)(a) provides that "[t]his section does not apply in situations in which the person is engaging in * * * [a]ctivity that would constitute resisting arrest under ORS 162.315." Thus, the plain text of the statute establishes that the legislature intended to limit the scope of the crime of IPO by excluding conduct that constitutes resisting arrest, as defined by ORS 162.315. Thus, a person cannot be convicted of both IPO and resisting arrest based on the same conduct; if conduct constitutes resisting arrest, it cannot also constitute IPO.

But, the plain text of the IPO statute is silent as to the mechanism for applying subsection (3)(a)—that is, whether the state can charge a person with both IPO and resisting arrest based on the same conduct, and if so, by what method a defendant can raise, and a trial court give effect to, subsection (3)(a). Therefore, we turn to the legislative history of the statute for guidance in answering that question.

The legislature enacted the IPO statute in 1997 in response to *City of Eugene v. Kruk*, 128 Or App 415, 420, 875 P2d 1190 (1994), in which we held that the City of Eugene's IPO ordinance was preempted by the state's resisting arrest statute. As enacted in 1997, the IPO statute stated that "[t]his section does not apply in situations in which a peace officer is making an arrest." ORS 162.247(3) (1997). Representative Floyd Prozanski of Eugene, who drafted the IPO statute, made clear that the purpose of that language was to ensure that the IPO statute would not overlap with the resisting arrest statute. Tape Recording, Senate Crime and Corrections Committee, SB 423, Feb 19, 1997, Tape 13, Side A (statement of Rep Floyd Prozanski). He explained:

> "[This bill] has a caveat that this statute would not be applicable in the making of an arrest. The reason I think that is important to distinguish is because we already have

on the books resisting arrest which applies not only to the individual who is in fact being arrested but a third person who may be interfering in the arrest of the person being arrested. *** *It is not my intent to create a new statute that's going to give another means of citing someone for that same conduct that is already regulated by state law under the resisting arrest [statute].*"

*Id.* (emphasis added). He further explained:

"And we have a body of law that goes with resisting arrest that says so long as that resistance is passive it's permissible. And my intent is not to circumvent what is already in the body of law regarding resisting. *And that is why the City of Eugene and I have agreed with not having this statute if it should become law apply to making of an arrest. I believe we've got a good body of law as to how we are going to deal with that.* And, it's another tool or mechanism to deal with the situation *where you have an officer who is involved in something less than performing the arrest* but they are forced to divert their attention from what could be a very serious threatening safety reason for that officer or anyone else to deal with somebody that is really out of line and out of place for the context of what's occurring."

*Id.* (emphases added).

In 1999, the legislature amended ORS 162.247, modifying subsection (3), as follows:

"(3)   This section does not apply in situations in which [*a peace officer is making an arrest*] **the person is engaging in:**

"**(a)   Activity that would constitute resisting arrest under ORS 162.315; or**

"**(b)   Passive resistance.**"

Or Laws 1999, ch 1040, § 7 (deletions in brackets and italics, additions in bold). The change narrowed the resisting arrest exception and added a passive resistance exception. Legislative Counsel John Horton explained that the amendments were

"really the clarification of the language. The language that is being deleted is language that says this section does not apply in situations in which *** 'the peace officer is making an arrest.' *** *The original intent, as I understand it,*

*of that subsection 3 was to say that if you are charging a person with resisting arrest that we are trying to prevent the offender from being doubled up with two charges: both resisting arrest and [IPO].* In practice, what has happened is that the [exception] has been construed a bit too broadly, and so what this would do is simply provide that, *if the activity constitutes resisting arrest under that statute then the person cannot be charged with [IPO], but, if the activity did not constitute an offense under the other statute, then they could be charged under this crime of [IPO]."*

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B (statement of Legislative Counsel John Horton) (emphases added). Additionally, Representative Prozanski reaffirmed the original intent of the resisting arrest exception:

*"What we didn't want to see is where you would double up on the charging* of getting resisting arrest if you were resisting your own arrest or somebody else's arrest and then get the second charge of interfering with that arrest because that is already covered by state law."

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B (statement of Rep Floyd Prozanski) (emphasis added).

Based on the text and legislative history of the IPO statute, we conclude that the legislature intentionally excluded conduct that constitutes resisting arrest from the definition of IPO. We further conclude that the legislature intended to prohibit the state from charging a defendant with both resisting arrest and IPO based on the same conduct. As Representative Prozanski said with respect to the IPO statute in 1997, it was "not [his] intent to create a new statute that's going to give another means of *citing someone for that same conduct* that is already regulated by state law under the resisting arrest [statute]." Tape Recording, Senate Crime and Corrections Committee, SB 423, Feb 19, 1997, Tape 13, Side A (statement of Rep Floyd Prozanski) (emphasis added). And, as Legislative Counsel Horton explained in 1999, the resisting arrest exclusion in the IPO statute was intended to "prevent the offender from *being doubled up*

*with two charges*: both resisting arrest and [IPO,]" and, as a result, "if the activity constitutes resisting arrest under that statute then the person *cannot be charged* with [IPO.]" Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B (statement of Legislative Counsel John Horton) (emphasis added). Likewise, as Representative Prozanski reiterated in 1999, the legislature did not want to see the state "double up on the charging." Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3374, May 4, 1999, Tape 178, Side B (statement of Rep Floyd Prozanski).

In keeping with that legislative history, we conclude that the state cannot charge a defendant with both resisting arrest and IPO based on the same conduct. The state cannot "double up" on the charges. Instead, it must choose which crime to charge. If the state's theory is that the defendant's conduct constitutes resisting arrest, it cannot add an IPO count based on the same conduct. That is, it cannot proceed on a theory that a person is guilty of IPO because the person resisted arrest, either their own or someone else's. Therefore, in a case like this one, where the state charges a defendant with resisting another person's arrest, the state cannot also charge the defendant with IPO based on the same conduct. To do so would essentially be charging the defendant with both resisting arrest and not resisting arrest based on the same conduct.

The legislature defined IPO to exclude conduct that constitutes resisting arrest, and, as the legislative history shows, the legislature did not want defendants *charged* with resisting arrest and IPO based on the same conduct. It follows that the legislature also did not want them to be *tried* or *convicted* of the two crimes based on the same conduct. Therefore, if a defendant establishes that the state has engaged in the prohibited double charging, the defendant is entitled to relief through the dismissal of the IPO charge. To hold otherwise would be contrary to the legislature's intent.

In this case, when it became clear after the state's case-in-chief that the state's theory on the IPO counts was that defendant had interfered with the officers by resisting Storaasli's arrest, defendant requested relief from the trial

court by arguing that the trial court could not submit the IPO counts to the jury. In response, the state did not dispute that it had based the three counts on the same conduct, but it argued that the trial court should submit all of them to the jury, and it suggested that, if the jury found defendant guilty of both IPO and resisting arrest, then the guilty verdicts might merge.

We conclude that the trial court erred by submitting the IPO counts to the jury. Once it became clear that the state had engaged in the double charging that the legislature intended to prevent, the trial court had to give effect to the legislature's intent by dismissing the IPO counts. It could not allow the state to proceed on a theory that defendant committed IPO by engaging in conduct that the state also alleged constituted resisting arrest under ORS 162.315, because ORS 162.247 expressly does not apply to such conduct.

The state contends that defendant did not utilize a proper procedural mechanism to challenge the submission of the IPO counts to the jury. Specifically, the state contends that (1) defendant had to raise her challenge to the double charging as a demurrer and (2) defendant cannot make a motion for judgment of acquittal on an IPO count on the ground that the conduct upon which the count is based constitutes resisting arrest.

First, regarding the state's demurrer argument, we note that in cases where it is clear from the charging instrument that the state is charging both resisting arrest and IPO based on the same conduct, a defendant may be able to demur to the charging instrument. *See* ORS 135.630(5) (a defendant may demur the accusatory instrument when it contains "matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the action"); *see, e.g., State v. Burton*, 114 Or App 84, 88, 834 P2d 477 (1992) (affirming demurrer under ORS 135.630(5) of charging instrument that, on its face, established complete defense). In addition, in cases where the state's double charging is not apparent from the charging instrument, but is later acknowledged by the state, a defendant may be able move to dismiss the IPO charge pretrial.

*See, e.g., State v. Timmermann,* 220 Or App 458, 469, 187 P3d 744 (2008) (trial court should have granted defendant's pretrial motion to dismiss after the state conceded a fact that established a complete defense to the alleged violation). But, in this case, it is not apparent from the charging instrument itself that the IPO and resisting arrest counts are based on the same conduct; therefore, defendant could not have utilized a demurrer to challenge the IPO counts. *See* ORS 135.630 (authorizing demurrers based "upon the face" of the accusatory instrument). In addition, nothing in the record indicates that the state notified defendant before trial that the two charges were based on the same conduct; therefore, defendant could not have moved to dismiss the IPO count before trial.

Thus, defendant had to raise the issue at trial. As the record of the trial court proceedings shows, the parties and the court were uncertain about how to categorize the issue. Defendant referred to her request for relief as a motion for judgment of acquittal and, after the state questioned that label, as a motion to dismiss. But, despite any uncertainty about how to label it, the substance of defendant's claim was clear. Defendant asserted, repeatedly, that the state had charged both IPO and resisting arrest based on the same conduct. She contended that the charges were "all related to an attempt, in their version, for Mr. Storaasli's arrest to be stopped by [defendant], her efforts to do that. And in this case, the section simply does not apply." She further contended that the trial court should not submit the IPO count to the jury "when the State's theory is that she was attempting to resist Mr. Storaasli's arrest." The state could not, she argued, "take a position * * * that [defendant] was resisting the arrest of Mr. Storaasli [and] then simultaneously, maintain a charge that they know and have been instructed by the legislature, does not apply in situations where they think there was this resisting arrest activity." Thus, defendant's motion was directed at the state's double charging.

Defendant's motion was sufficient to put the state and trial court on notice of the substance of her challenge. On this point, *State v. Meyer,* 183 Or App 536, 53 P3d 940 (2002), is instructive.

In *Meyer*, the defendant was tried for speeding. After the state's case-in-chief, the defendant moved to dismiss the case because the police officer had stopped him in Washington, after the defendant had crossed the Interstate 5 Bridge. 183 Or App at 538. The defendant asserted that the officer did not have the authority under ORS 810.410(2)(a) to stop and cite him in Washington. The trial court denied the motion and convicted defendant. *Id.* On review, we interpreted ORS 810.410(2)(a), which limits the authority of Oregon officers to stop individuals outside the state's boundaries, and determined that the officer did not have authority to stop the defendant. *Id.* at 548.

The state nonetheless argued that the trial court properly denied the defendant's motion, "because, as a procedural matter, no law authorizes a court to dismiss a traffic violation citation on the ground that a police officer lacked authority to stop and cite a person for the violation." *Id.* at 540. On appeal, we rejected the state's procedural argument and concluded that the defendant's motion was sufficient and timely:

> "it is unnecessary to identify a particular procedural mechanism by which defendant was authorized or required to make his challenge. Again, following presentation of the state's evidence * * * defendant asserted, by way of motion to dismiss, that [the officer] lacked authority to stop and cite him in [Washington] and that the resulting citation therefore was, in effect, void *ab initio*. In doing so, defendant fairly put before the trial court the substance of his challenge to the citation. Moreover, because defendant's motion relied in part on the state's evidence relating to [the officer's] reason for stopping defendant, the motion was timely. Under those circumstances, we decline to hold that the possible failure of defendant's motion to readily fit into any particular procedural pigeonhole divests him of any opportunity to be heard on that issue."

*Id.* at 541-42.

The situation is similar in this case. Once the state's theory became clear, defendant invoked ORS 162.247(3)(a) and asserted that the trial court could not submit the IPO counts to the jury when they were based on the same conduct as the resisting arrest count. Thus, defendant "fairly

put before the trial court the substance of [her] challenge[.]" *Meyer*, 183 Or App at 542.

Defendant's motion is best categorized as a motion to dismiss, and it was properly before the trial court. Contrary to the state's argument, it did not require the trial court to determine if defendant was guilty of resisting arrest, and therefore entitled to a judgment of acquittal on the IPO counts. Instead, it required the trial court to determine, as a matter of law, whether the state could proceed on both the IPO counts and the resisting arrest count based on the same conduct.[4] For the reasons explained above, the state could not, and the trial court erred by allowing it to do so.

Nothing in the text, context, or legislative history of the IPO statute supports the state's view, asserted in the trial court, that the legislature intended to allow the state to proceed on both an IPO count and a resisting arrest count for the same conduct and then, if the defendant is found guilty of both charges, merge the guilty verdicts into a single conviction. Indeed, contrary to the state's suggestion, merger of an IPO charge and a resisting arrest charge would not be an option for a trial court because, under the anti-merger statute, ORS 161.067, guilty verdicts based on violations of separate statutory provisions do not merge if the provisions contain different elements, and IPO and resisting arrest have different elements.[5]

We acknowledge that the jury acquitted defendant of the resisting arrest count and one of the IPO counts while convicting her of the other IPO count. Because the jury did not convict defendant of IPO and resisting arrest, this case does not involve inconsistent verdicts. But that fact does not mean that the trial court did not err; as defendant argued,

---

[4] Because it is undisputed that the state based the IPO counts and the resisting arrest count on the same conduct, the question before the trial court was whether the state had engaged in prohibited double charging. Thus, this case does not present the question of whether, if the state has charged a defendant with IPO, the defendant can move for a judgment of acquittal on the ground that the charged conduct constitutes resisting arrest.

[5] ORS 161.067(1) provides, "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

the trial court should not have submitted the IPO counts for the jury to consider because they were based on the same conduct. Defendant was prejudiced by the error because she was convicted of a count that the trial court should have dismissed.

In sum, because the legislature intended to prohibit the state from charging both IPO and resisting arrest based on the same conduct, and, when defendant challenged the charges in this case, it was clear from the state's evidence that the state had done exactly that, the trial court erred by denying the motion as to the IPO count.

Conviction for interfering with a peace officer reversed; otherwise affirmed.